**FEDERAL LAND BANK OF ST. PAUL, Respondent,**

v.

**Warren H. CARLSON, a.k.a. Warren Carlson, et al., Appellants,**

**Production Credit Association of Fergus Falls, et al., Defendants.**

**No. C4–86–953.**

Court of Appeals of Minnesota.

Dec. 30, 1986.

Review Denied March 13, 1987.

Richard C. Hefte, Rufer & Hefte, Fergus Falls, for respondent.

Patrick J. Neaton, Muenzer & Neaton, Minneapolis, for appellants.

Heard, considered, and decided by WOZNIAK, P.J., RANDALL and NIERENGARTEN, JJ.

## OPINION

WOZNIAK, Judge.

Respondent Federal Land Bank of St. Paul brought an action to confirm the foreclosure sale of appellants Wayne and Judith Carlson's property. The trial court confirmed the foreclosure sale even though the sheriff and the Federal Land Bank modified the Carlsons' selection of an 80–acre homestead by encumbering it with an easement benefiting the landlocked non-homestead portion. We affirm.

## FACTS

Warren and Judith Carlson own a farm consisting of 320 acres, plus a quarter-mile long driveway, in Otter Tail County. The Carlsons' home and the main buildings of their turkey farming operation are located on this 320–acre parcel. They also own a separate parcel of land in Otter Tail County consisting of 196 acres, but that parcel is not the subject of this litigation.

Federal Land Bank, through foreclosure by action, obtained a Judgment and Decree of Foreclosure against the Carlsons' mortgaged property on August 6, 1985, and scheduled a sheriff's foreclosure sale to be held on November 14, 1985.

Less than two full days before the foreclosure sale, the Carlsons served the Otter Tail County Sheriff and Federal Land Bank with a "Notice of Claim for Separate Sale of Homestead Under Minnesota Statute § 542.04." That notice legally described the designated 80–acre homestead parcel, which included the Carlsons' home, farm

buildings, and driveway. The Carlsons also filed the notice with the county recorder.

On November 14, 1985, the sheriff proceeded with the foreclosure sale, attended by the Carlsons and counsel for Federal Land Bank. Federal Land Bank was the only bidder.[1] Without informing the Carlsons, the Federal Land Bank prompted the sheriff to sell the designated homestead tract burdened by an easement of ingress and egress. The sheriff also sold the non-homestead tract benefited by the easement crossing the driveway on Carlsons' homestead portion.

Federal Land Bank then moved the district court for confirmation of the foreclosure sale. Federal Land Bank supported its action in modifying Carlsons' designated 80–acre tract because the modification allowed access to the otherwise landlocked 240–acre tract. The Carlsons objected to confirmation based on Federal Land Bank's unilateral action in burdening the designated 80–acre homestead tract with an easement. The trial court confirmed the foreclosure sale, stating in the attached memorandum that "not permitting the easement would unreasonably affect the value of the remaining tracts sold, which would be contrary to Minnesota Statute § 582.04." The Carlsons appeal.

## ISSUES

1. Does the mortgagee have a unilateral right to alter the designated homestead, which was chosen by the mortgagor to be sold separately at the foreclosure sale, in order to comply with the statutory provision requiring the designated portion to not unreasonably affect the value of the remainder?

2. Did the trial court err in ruling that the Carlsons' homestead selection would unreasonably affect the value of the landlocked nonhomestead portion?

## ANALYSIS

■ 1. Minnesota law allows a mortgagor to have the homestead sold separately in a foreclosure sale:

In all proceedings to foreclose any mortgage upon real property in this state, if the whole or any part of the homestead of the mortgagor, or of any one claiming under him, as such homestead is defined by the laws of this state, shall be included in the real estate described in such mortgage, the person claiming such homestead may at any time prior to the foreclosure sale, serve or cause to be served upon the sheriff making such sale a notice of such claim which shall *designate and describe with reasonable certainty the real estate so claimed and selected as such homestead, which selection shall include the site of the dwelling and its appurtenances, shall be compact in form and shall be so made as not unreasonably to affect the value of the remaining part,* which notice, together with the proof of service thereof, shall be filed for record and recorded in the office of the county recorder or registrar of titles. Upon the service and filing of such notice it shall be the duty of the sheriff, at the time of the sale, to first offer for sale and sell that part of the mortgaged real estate, or so much thereof as is necessary which is not included in such selected homestead, and thereupon, if the proper purposes of the foreclosure require, he shall offer for sale and shall sell separately that part of the mortgaged real estate included in the selected homestead; provided, that if such homestead claimant shall have, prior to such foreclosure, made a property homestead selection from his real estate, he shall be bound thereby, and cannot change the same for the purposes of such foreclosure.

Minn.Stat. § 582.04 (1984) (emphasis added). The Carlsons argue that the sheriff and Federal Land Bank acted improperly

---

**1.** Respondent bid $222,836 for the Carlsons' designated 80–acre homestead tract; $33,500 for the remaining 240 acres; $78,400 for the 196– acre farm in Section 34; and $37,500 for the irrigation equipment.

by unilaterally changing the description of the designated homestead parcel to reflect the burden of an easement upon the parcel. Federal Land Bank argues that the Carlsons, by choosing their designated homestead and filing it with Federal Land Bank and the county recorder less than two full days before foreclosure, forced respondents to alter the Carlsons' selection in order "not unreasonably to affect the value of the remaining part." *Id.*

The statute does not allow the mortgagee to decide whether the selection unreasonably affects the remainder of the property. In a dispute between the mortgagor and mortgagee, the best procedure, and the one probably contemplated by the statute, involves a judicial determination of reasonableness prior to the foreclosure of the mortgage. If this were not the case, the mortgagee could, in effect, designate the 80–acre homestead in contravention of the statute which allows the mortgagor to designate the homestead parcel. Even though judicial determination of disputes may require a postponement of the mortgage foreclosure sale, the mortgagee is not unduly burdened by postponing the sale to a later date.

Furthermore, since the statute allows the mortgagor to file the designated homestead "at any time prior to the foreclosure sale," the right to judicial determination is not expressly waived by statute. *Id.*

■ 2. In the action to confirm the foreclosure sale, the trial court examined the issue of whether Carlsons' homestead selection unreasonably affected the value of the remainder of the property by leaving the remaining land without access to a public road. The Carlsons agree that conducting a farming business on landlocked land is unreasonable; however, they argue that an easement burdening the homestead parcel is not a reasonable solution.

First, the Carlsons argue that they are entitled to a full 80–acre homestead, not a homestead encumbered by an easement. The homestead statute does not mandate that a homestead be at least 80 acres, but rather a homestead "may include any quantity of land not exceeding 80 acres." Minn. Stat. § 510.02 (1984).

Second, they suggest that the Federal Land Bank must utilize the cartway statute to gain access to a roadway. *See* Minn. Stat. § 164.08, subd. 2 (1984). The trial court rejected the notion of utilizing the cartway statute for two reasons. First, the statute would allow the condemnation of land belonging to a nonparty to this action, while Federal Land Bank's action involved only the two parties. Second, the driveway across the Carlsons' land already existed. If another person's land were condemned for a cartway, Federal Land Bank would have to build the driveway. The owner of the cartway would not only be bothered by the condemnation of a strip of property, but by the resulting construction. The trial court's reasoning is sound.

The trial court's finding that the choice of homestead was unreasonable affects whether Federal Land Bank's action invalidated the foreclosure sale. The unilateral procedure used by the sheriff and Federal Land Bank to modify the legal description of the designated homestead to include an easement benefiting an abutting piece of land was improper. In this case, however, the record reveals that the modification undertaken by the sheriff and the Federal Land Bank was precisely the modification that the trial court would have taken had the foreclosure sale been postponed and the issue judicially resolved prior to foreclosure. Consequently, the Carlsons' request to invalidate the foreclosure based on improper procedure, even if granted, would eventually come to the same result.

### DECISION

Accordingly, the trial court did not err in confirming the foreclosure sale.

Affirmed.